UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Martin Berchie, | Case No. 25-cv-3197 (KMM/SGE) |
| Petitioner, | |
| v. | REPORT & RECOMMENDATION |
| Pamela Bondi, Kristi Noem, Todd M. Lyons, Marcos Charles, Sam Olson,[1] U.S. Immigration and Customs Enforcement, U.S. Department of Homeland Security, and Joel Brott, | |
| Respondents. | |

This matter is before the Court on Martin Berchie's Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241 (Dkt. 1), and Emergency Motion for Temporary Restraining Order ("TRO") (Dkt. 2). Mr. Berchie alleges his immigration detention violates federal regulations, the Due Process Clause of the Fifth Amendment, and the Administrative Procedure Act ("APA"). (*See generally* Dkt. 1.) For the reasons outlined below, the Court recommends that the Petition be **GRANTED,** and the TRO be **DENIED** as moot.

---

[1] Respondents' names are automatically substituted to those of current officeholders pursuant to Fed. R. Civ. P. 25(d).

1

## BACKGROUND

Mr. Berchie is a citizen of Ghana who was admitted into and authorized to remain in the United States for the duration of his student visa. (Dkt. 9 at ¶¶ 4-5.) Mr. Berchie was first taken into immigration custody on November 2, 2020, a few months after he was charged with criminal sexual conduct in Minnesota state court. (*Id.* ¶ 6-7.) On March 25, 2021, Mr. Berchie was ordered removed to Ghana. (*Id.* ¶ 10.) This removal order became final when Mr. Berchie withdrew his administrative appeal from the Board of Immigration Appeals on May 28, 2021. (*Id.* ¶ 11.)

On January 25, 2022, Mr. Berchie filed a habeas petition challenging his post-removal-order detention. (Dkt. 1 ¶ 44 (citing *Berchie v. Garland*, No. 22-cv-00202, (NEB/BRT) (D. Minn), Dkt. 1).) Respondents did not contest the petition and released him on an Order of Supervision ("OOS") on January 31, 2022, due to Ghana's failure to timely issue a travel document. (Dkt. 9 ¶ 12.)  By all accounts, Mr. Berchie has complied with the conditions of his OOS for more than three and a half years.

On August 7, 2025, Mr. Berche was arrested by Immigration and Customs Enforcement ("ICE") and served a Notice of Revocation of Release. (*Id.* ¶ 13, Dkt. 9-4 at 2.) The written notice provided that his OOS had been revoked due to "changed circumstances in [his] case." (Dkt. 9-4 at 2.) The Notice further stated, "ICE has determined that you can be expeditiously removed from the United States pursuant to the outstanding order of removal against you." (*Id.*) Relevant here, the Notice also advised Mr. Berchie that his "case will be reviewed by the Government of Ghana for issuance of a travel

document." (*Id.*) Mr. Berchie has been detained in the Sherburne County Jail since his arrest. (Dkt. 1 ¶ 8.)

On August 11, 2025, Mr. Berchie filed this Petition along with a TRO. (Dkts. 1, 2.) The day after Mr. Berchie's Petition was filed, and five days after Mr. Berchie was re-detained, Respondents sent a travel document request to ICE headquarters. (Dkt. 9. ¶ 14.) On August 20, 2025, eight days after sending the travel documents to ICE headquarters, the travel document request was sent to the Ghanian Embassy. (*Id.*)

On August 20, 2025, the ICE Enforcement and Removal Operations ("ERO") requested from ICE headquarters a determination of Mr. Berchie's "significant likelihood of removal in the reasonably foreseeable future" and a timeline for the issuance of his travel documents from Ghana. (*Id.* ¶ 15.) ICE headquarters informed the ERO that that there is a significant likelihood of removal in the reasonably foreseeable future despite an estimated three to four weeks to obtain travel documents *after* Mr. Berchie completes a nationality verification interview with the Ghanian Embassy. (*Id.* ¶ 16.) Mr. Berchie's nationality verification interview has been "tentatively" scheduled for next week, but is subject to "embassy scheduling," in other words, the interview has not been confirmed. (*Id.* ¶ 16.) On August 22, 2025, Respondents filed their response to the Petition and the temporary restraining order. (Dkts. 8, 9.) Petitioner filed a reply on August 24, 2025. (Dkts. 10, 11.)

## ANALYSIS

Federal courts have jurisdiction to order the release of a person held in the custody of the United States in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The court's jurisdiction over habeas extends to a person held in

3

immigration detention. *See INS v. St. Cyr*, 533 U.S. 289, 305–06 (2001); *Ceesay v. Kurzdorfer*, No. 25-CV-267 (LJV), 2025 WL 1284720, at *17–21 (W.D.N.Y. May 2, 2025) (discussing jurisdiction over habeas petition alleging ICE failed to follow 8 C.F.R. § 241.4).

Mr. Berchie argues that he should be released because he was not adequately notified as to why his OOS was revoked nor of a change in circumstances that would render his removal significantly likely in the reasonably foreseeable future, in violation of 8 C.F.R. § 241.13(i). Mr. Berchie also contends that Respondent's conduct violates the APA and the Due Process Clause of the Fifth Amendment. (Dkt. 1 ¶¶ 95-104.) Because the Court recommends that Mr. Berchie's Petition be granted on regulatory grounds, this report and recommendation does not address his other arguments.

## I. Regulatory Claims

When a noncitizen[2] has been detained pursuant to a final order of removal, ICE is required to release the noncitizen on an order of supervision if there is no significant likelihood of removal in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13(g)–(h); *see also Zadvydas*, 533 U.S. 678, 699–700 (2001) ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."). Here, although Mr. Berchie was ordered removed to Ghana, he remained in ICE custody until he eventually filed a habeas petition challenging that detention. (Dkt. 1 ¶ 44 (citing *Berchie v. Garland*, No. 22-cv-00202, (NEB/BRT) (D.

---

[2] This Order uses the term "noncitizen" as equivalent to the statutory term "alien." *Barton v. Barr*, 590 U.S. 222, 226 n.2 (2020) (using the term 'noncitizen' as equivalent to the statutory term "alien") (citing 8 U.S.C. § 1101(a)(3)).

4

Minn), Dkt. 1).) Thereafter, ICE voluntarily released Mr. Berchie on an OOS. (Dkt. 9 ¶ 12.)

Once a noncitizen is released under an order of supervision, as Mr. Berchie has been here, ICE may revoke that release in two circumstances: (1) for violations of conditions of an order of supervision or (2) "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." Title 8 C.F.R. § 241.13(i)(1), (2). The burden to establish changed circumstances is on ICE. *See Hernandez Escalante v. Noem*, No. 9:25cv-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) ("The[] regulations clearly indicate, upon revocation of supervised release, it is [ICE's] burden to show a significant likelihood that the [noncitizen] may be removed."); *Nguyen v. Hyde*, No. 25-cv-11470-MJJ, 2025 WL 1725791, at *3 n.2 (D. Mass. June 20, 2025).

If ICE elects to revoke an order of supervision under either of these two circumstances, the noncitizen must "be notified of the reasons for revocation of his or her release," and must "conduct an initial informal interview promptly after [the noncitizen's] return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.13(i)(3). At the interview, the noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future" and then ICE must consider the contested facts and determine whether revocation of release was warranted. *Id.*

### A. Adequate Notification

Here, the Notice provided to Mr. Berchie informed him that there were "changed circumstances," stating that "ICE has determined that you can be expeditiously removed." (Dkt. 9-4 at 2.) Relevant here, the Notice also advised Mr. Berchie that his "case will be reviewed by the Government of Ghana for issuance of a travel document." (*Id.*) Absent from this Notice was any mention of a significant likelihood of removal in the reasonably foreseeable future. (*Id.*) The Notice does not state that ICE was seeking travel documents or had contacted the Government of Ghana *before* arresting him. *See Chavez Barrios v. Ripa*, No. 1:25-cv-22644, 2025 WL 2280485, at *6 (S.D. Fla. Aug. 8, 2025) (notice stated ICE had received travel document); *Tran v. Baker*, No. 1:25-cv-01598-JRR, 2025 WL 2085020, at *4–5 (D. Md. July 24, 2025) (ICE requested travel documents before re-detaining noncitizen). Because the Notice does not merely parrot the regulatory text and informs Mr. Berchie that his "case will be reviewed by the Government of Ghana for issuance of a travel document," the Court finds that the Notice satisfies the regulation's requirement that Mr. Berchie "be notified of the reasons for revocation of his . . . release." 8 C.F.R. § 241.13(i)(3). Consequently, relief is not recommended on this argument.

### B. Changed Circumstances

The decision to re-detain a noncitizen out of custody on an order of supervision (OOS) must be based on an individualized determination that changed circumstances render removal significantly likely in the reasonably foreseeable future. *See Kong v. United States*, 62 F.4th 608, 619–20 (1st Cir. 2023) (citing § 241.13(i)(2)). ICE should make the determination to re-detain based on the following factors:

6

> [T]he history of the [noncitizen's] efforts to comply with the order of removal, the history of [ICE's] efforts to remove [noncitizens] to the country in question or to third countries, including the ongoing nature of [ICE's] efforts to remove this [noncitizen] and the [noncitizen's] assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of [noncitizens] to the country or countries in question.

8 C.F.R. § 241.13(f); *see Vang v. Bondi et al.*, 25-cv-2836, (LMP/JFD), Dkt. 17 at 7 (D. Minn. August 11, 2025) (discussing ICE's obligation to consider 8 C.F.R. § 241.13(f) factors) *and Roble v. Bondi et al.*, 25-cv-3196, (LMP/LIB), Dkt. 12 at 9 (D. Minn. August 25, 2025) (same); *Sarail A. v. Bondi*, No. 25-cv-2144 (ECT/JFD), Dkt. 9 at 5 (D. Minn. June 17, 2025) (same). A court reviewing ICE's decision to re-detain a noncitizen should do so "in light of the regulations instructing ICE on how it should make such a determination." *Kong*, 62 F.4th at 620.

Here, Mr. Berchie's Notice stated that (1) there were "changed circumstances," (2) "ICE has determined that you can be expeditiously removed," and (3) his "case will be reviewed by the Government of Ghana for issuance of a travel document." (Dkt. 9-4 at 2.) These bare statements do not inform the Court as to whether there is a "significant likelihood" that Mr. Berchie "may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). In fact, there is no evidence that ICE considered the 8 C.F.R. § 241.13(f) factors *before* issuing the Notice and re-detaining Mr. Berchie. Rather the evidence submitted by ICE demonstrates that the factors in revoking Mr. Berchie's release were not considered until after he was re-detained. For example, ICE did not seek travel documents until well after Mr. Berchie was re-detained and did not consider an analysis of the foreseeability of his removal until even after requesting travel documents. (Dkt. 9 ¶¶

7

14, 15.) In sum, there is no evidence demonstrating to the Court that there is a significant likelihood that Mr. Berchie will be removed in the reasonably foreseeable future. ICE's inability to obtain travel documents from Ghana is why Mr. Berchie was released from detention in the first place on January 31, 2022. (*Id.* ¶ 12.)

Moreover, merely requesting travel documents does not constitute "changed circumstances" if it is unlikely the travel documents will be issued. *See Liu v. Carter*, No. 25-3036-JWL, 2025 WL 1696526, at *2 (D. Kan. June 17, 2025) (explaining that requesting travel documents did not constitute changed circumstances where there is no evidence that submitting a request has an effect on obtaining a travel document). Here ICE has not demonstrated that the travel documents are likely to issue. Officer Thomas Murphy's declaration states that days after Mr. Berchie was re-detained – ICE learned that Ghana has issued 70 travel documents this year. (Dkt. 9 ¶ 16.) However, this information lacks context. As Mr. Berchie points out, only 70 travel documents have been issued so far this year when as of November 2024, there were 3,228 Ghanaians subject to final orders of removal still living in the United States. (Dkt 10 at 9 (citing Dkt. 11).) Thus, the issuance of 70 travel documents in 2025 does not support an argument that Ghana *ordinarily* issues travels documents. Nor does Officer Murphy compare the number of travel documents issued this year to travel documents requested in previous years and granted by Ghana. And there is no individualized information about when and whether Mr. Berchie is likely to get travel documents from Ghana.

In sum, Respondents have produced evidence of the steps they took to obtain travel documents from Ghana *after* Mr. Berchie was re-detained, those steps tell the Court

nothing about the "likelihood of removal in the reasonably foreseeable future," and the actions of ICE after-the-fact fall far short of demonstrating changed circumstances warranting Mr. Berchie's re-detention. *See Nguyen*, 2025 WL 1725791, at *4 (finding fault with similarly sparse evidence of removals by ICE); *Hoac v. Becerra*, No. 2:25-cv-01740DC-JDP, 2025 WL 1993771, at *5 (E.D. Cal. July 16, 2025) (same*); Phan v. Becerra*, No. 2:25-CV-01757-DC-JDP, 2025 WL 1993735, at *4 (E.D. Cal. July 16, 2025) (same); *cf. Liu*, 2025 WL 1696526, at *2. Simply put, ICE has not followed its own regulations. *See Mohammed H. v. Trump*, 781 F. Supp. 3d 886, 895 (D. Minn. 2025) ("An agency must . . . follow its own regulations.") (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265 (1954); *Webster v. Doe*, 486 U.S. 592, 602 n.7 (1988)).

In light of the foregoing, the Court recommends that Mr. Berchie's petition for writ of habeas corpus be granted, and he be released subject to the conditions of his previous order of supervision. The Court does not recommend granting Mr. Berchie's request to enjoin ICE from re-detaining him without court approval because ICE could comply with 8 C.F.R. § 241.13(i) in the future.

## RECOMMENDATION

Accordingly, it is **HEREBY RECOMMENDED** that:

1. Petitioner Berchie's Petition for a Writ of Habeas Corpus (Dkt. 1) be **GRANTED** and the Petitioner be released from custody subject to the conditions in the prior order of supervision;

2. Petitioner's request for declaratory relief be **DENIED**; and

3. Petitioner's Emergency Motion for Temporary Restraining Order (Dkt. 2) be **DENIED** as moot.

Dated: September 3, 2025                    *s/Shannon G. Elkins*
                                            SHANNON G. ELKINS
                                            United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).